RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

MICHAEL GRESHAM,

          *Plaintiff-Appellant*,

v.

TERRY MEDEN, Psychiatrist; PAUL E. EYKE, Psychologist and Unit Chief; ROBERT NIVEN, M.D.; MARK HARES, Psychologist; AMY ROBAR, LMSW; JENNIFER FAHA, Psychologist, Mental Health Director Designee; ROBIN J. BAILEY-WEBB, LMSW; HARRIS, LMSW; GREEN, Psychologist,

          *Defendants-Appellees*.

No. 18-1911

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 2:18-cv-00008—Robert J. Jonker, District Judge.

Decided and Filed:  September 18, 2019

Before:  NORRIS, SILER, and SUTTON, Circuit Judges.

─────────────

## LITIGANT

**ON BRIEF:**  Michael Gresham, Marquette, Michigan, pro se.

─────────────

## OPINION

─────────────

SUTTON, Circuit Judge.  Michael Gresham is serving a 75-year sentence in a state prison in Marquette, Michigan.  He filed this § 1983 action against several prison employees, alleging that they improperly forced him to take antipsychotic medication.  At stake is not the

truth of those allegations but whether Gresham must pay a filing fee before pursuing them. The district court concluded that he must pay.  We agree and affirm.

Anyone who files a lawsuit in federal court ordinarily must pay a $400 filing fee.  *See* 28 U.S.C. § 1914.  But individuals who cannot afford the fee may ask to proceed "in forma pauperis"—"as a poor person"—a status that permits them to avoid filing fees and other court costs.  *See id.* § 1915.  But that fee waiver may be removed for prisoner plaintiffs who abuse the privilege.  Prisoners become ineligible to file free lawsuits if the courts have dismissed three or more of their lawsuits as "frivolous, malicious, or [for] fail[ure] to state a claim."  *Id.* § 1915(g).

Gresham wisely concedes he has three strikes.  He is a frequent frivolous filer, with at least eight baseless lawsuits to his name.  That part of the district court's ruling is not up for grabs and is unimpeachably right.

At issue instead is whether an exception to the three-strikes rule applies.  The statute frees poor prisoners from the rule if they are "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  To be eligible for the exception, the prisoner must plausibly allege such a danger.  *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013).

In Gresham's complaint, he alleges that the prison has required him to take Prolixin and that it has several side effects that satisfy this exception:  "chest pains, akathisia [muscular restlessness], seizures, vomiting, stomach cramps, and dizz[iness]."  The district court took Gresham's allegations to be true but concluded that his side effects did not amount to an imminent "serious physical injury" under § 1915(g).  It thus denied Gresham's request for pauper status and, when Gresham failed to pay the full filing fee, dismissed his case without prejudice.

Whether that resolution was right turns on the meaning of three words:  "serious physical injury."  28 U.S.C. § 1915(g).  Two of the words seem to have a straightforward meaning in this context.  "Injury" requires some sort of "loss, hurt, or detriment."  Webster's Third New International Dictionary 1164 (2002).  And "physical" requires the inmate to connect the injury to concrete manifestations in the body as opposed to a purely emotional or psychological harm. It's true that "[p]hysical problems can cause psychological ones, and the reverse, but the statute

supposes that it is possible to distinguish them." *Sanders v. Melvin*, 873 F.3d 957, 959 (7th Cir. 2017). Gresham at any rate plainly has alleged some physical ailments. He thus has satisfied these two requirements.

The meaning of "serious" is less straightforward. General dictionaries lay down a few markers. When Congress enacted § 1915(g) in 1996, the word meant "[w]eighty, important, grave . . . [a]ttended with danger; giving cause for anxiety." Oxford English Dictionary Online (2d ed. 1989). Definitions soon after were to the same effect. *See, e.g.*, Webster's Third New International Dictionary 2073 (2002) ("to cause considerable distress, anxiety, or inconvenience: attended with danger"); American Heritage Dictionary 1590 (4th ed. 2000) ("Being of such import as to cause anxiety; serious injuries.").

But context is everything in interpretation. One can't take the broadest (or for that matter narrowest) lay definition and simply affix it to the statute. The "cause[s] anxiety" sense of the term illustrates the point. Any injury a prisoner sues about presumably "cause[s] anxiety." If we adopted that definition, it would "blot" the three-strikes rule out of the statute. *Sanders*, 873 F.3d at 961.

Other sources narrow the range of options, supplying more useful metes and bounds. The contemporaneous edition of Black's defined "serious" in the context of an injury as "dangerous; potentially resulting in death or other severe consequences." Black's Law Dictionary 1371 (7th ed. 1999). The Model Penal Code likewise has long defined "serious bodily injury" as that which "creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Model Penal Code § 210.0. In contrast, without the word "serious," "bodily injury" is simply "physical pain, illness or any impairment of physical condition." *Id.* At the time, the Sentencing Guidelines had (and still has) a similar consequences-focused definition of "serious bodily injury": "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(M) (2018); *see also* U.S.S.G. supp. app. C, amend. 651, at 317–20 (2003).

All in all, these legal sources point to a meaning of "serious" that depends on potentially dangerous consequences. These sources are consistent with the broader definitions in contemporaneous lay dictionaries; they just provide more specifics. That leads to a workable rule: A physical injury is "serious" for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm. Minor harms or fleeting discomfort don't count.

The cases run in the same direction. Take *Vandiver*, our one reported case applying the "serious bodily injury" exception. The prisoner satisfied the exception because he faced impending "amputations and potentially coma or death." *Vandiver*, 727 F.3d at 587. The Seventh Circuit drew a comparable line between heightened risk of suicide or self-mutilation (which satisfied the test) and temporary breathing struggles (which did not). *Sanders*, 873 F.3d at 960. Other circuits have drawn similar lines. *See, e.g.*, *Ibrahim v. District of Columbia*, 463 F.3d 3, 6–7 (D.C. Cir. 2006) (risks of organ damage, organ failure, and death sufficed); *Gibbs v. Cross*, 160 F.3d 962, 965 (3d Cir. 1998) (risk of "life-threatening . . . disease" from exposure to asbestos sufficed); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) (risks of "pneumonia, esophageal candidiasis, salmonella, and wasting syndrome, which would cause [the prisoner] to die sooner[,]" sufficed).

Gresham's alleged injuries do not meet this exception. Chest pains, muscular restlessness, seizures, vomiting, stomach cramps, and dizziness can cause discomfort and pain, to be sure. But they are typically temporary and rarely life threatening. That's especially so in a case like this one, where the antipsychotic medication is given under the watch of medical professionals. These simply are not the kinds of injuries that can lead to impending death or other severe bodily harms and, no less importantly, Gresham has not remotely alleged how his complaints could lead to such harms while he is under medical supervision. No doubt, one could hypothesize scenarios in which some of Gresham's symptoms could lead to a "serious physical injury." But we can't speculate about risks and injuries that Gresham could have alleged but did not. *See Sanders*, 873 F.3d at 960.

We should acknowledge one path we did not follow in reaching this conclusion. It matters not whether Gresham's allegations are "self serving," as is sometimes said too casually in dismissing inmate allegations of this sort. It's well to remember that it's the rare statement in *any* pleading that is *not* self-serving. At one level, all statements in litigation are self-serving. There's nothing wrong with that. So long as the allegations are plausible at the pleading stage and supported by evidence at the summary judgment stage, they will be considered. *Id.*

The district court correctly concluded that Gresham is subject to the three-strikes rule. Pauper status is a privilege, not a right, and Gresham lost it by repeatedly filing meritless lawsuits. To proceed with this one, he'll have to pay the filing fee.

We affirm.